UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Huff and Senior Judge Clements


AMANDA LEE SMITH

                                                     MEMORANDUM OPINION[*]

v.       Record No. 1317-18-3                           PER CURIAM
                                                        JUNE 4, 2019

CITY OF ROANOKE DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(Wayne D. Inge, on brief), for appellant.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Sarah Jane Newton, Guardian *ad litem* for the minor
children, on brief), for appellee.


Amanda Lee Smith (mother) appeals the order terminating her parental rights to her

children, L.M. and A.S., and approving the goal of adoption. Mother argues that the circuit court

erred by denying her motions to strike, terminating her parental rights, and approving the goal of

adoption because there was insufficient evidence that: (1) termination of mother's parental rights

was in the children's best interests; (2) the alleged abuse or neglect suffered by the children

presented a serious and substantial threat to their lives, health, and development; (3) the conditions

which resulted in the alleged abuse or neglect could not be substantially corrected within a

reasonable period of time; (4) mother, without good cause, was unwilling or unable to remedy

substantially the conditions that led to, and required, the placement of the children in foster care;

(5) the City of Roanoke Department of Social Services (the Department) had made reasonable

efforts to reunite the children with mother; and (6) the Department provided reasonable and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appropriate services to mother. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

In January 2016, the Bedford County Department of Social Services received a complaint that mother was not adequately supervising her children. At the time, A.S. was four years old, and L.M. was eight years old.[2] Mother and the children moved from a domestic violence shelter to a hotel, where they were, at some point, joined by mother's boyfriend, William Brunner. A couple of weeks later, the Bedford County Department of Social Services received complaints that Brunner had physically abused L.M.

In March 2016, the Bedford County Department of Social Services transferred the case to the Department because mother, Brunner, and the children had moved to Roanoke City. The Department conducted a home visit and found Brunner to be defiant and uncooperative, while

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has two other children, one of whom was a teenager living with the maternal grandmother and one of whom was two years old living with mother and later a relative. Neither of these children are the subjects of this appeal. William Brunner is the biological father to the two-year-old child.

mother was resistant to any new services. The Department instructed mother and Brunner that they needed to complete a parenting class and that Brunner needed to complete a domestic violence alternative program. The Department provided in-home counseling for both children.

By August 2016, the Department learned that Brunner had refused to answer the questions on the paperwork for the domestic violence alternative program and was removed from the parenting class because of his "highly disruptive and disrespectful behavior." The Department also learned that the in-home counseling sessions for L.M. were at risk of being suspended because of Brunner's "disrespectful and defiant behavior." The Department continued to offer services to the family, but on September 1, 2016, sought a preliminary protective order.

The Roanoke City Juvenile and Domestic Relations District Court (the JDR court) entered child protective orders and adjudicated that the children were abused or neglected. The JDR court ordered Brunner to leave the home, have supervised visitation with the children, and complete the domestic violence alternative program. The JDR court also ordered mother and Brunner to participate in psychological and parental capacity evaluations.

Mother completed the parenting class, but did not demonstrate that she had improved her parenting skills or learned alternative discipline techniques. The Department referred mother to a budgeting class, individual counseling, psychiatric services, mental health skill building services, medication management, and crisis services. The Department entered into several safety plans with mother to protect the children. Despite the protective order prohibiting Brunner residing with the family, mother allowed Brunner to park his car behind their house. In June 2017, the police were called to the home because of a verbal altercation between mother and Brunner, and the Department received another complaint of a verbal altercation a week later. Brunner completed the domestic violence alternative program but declared that it was a "waste

of time." He also completed the psychological evaluation, but refused to comply with the recommended services.

The Department expressed concern about the children's well-being while in mother's care. The Department found the home to be in "constant chaos" and mother did not adequately supervise the children. The Department arranged for L.M. and A.S. to receive in-home counseling and crisis services. The in-home counselor worked with L.M. to stabilize her mood and increase positive behaviors at home. Although mother was cooperative with the in-home counselor and her services, Brunner "made it really hard for [L.M.] to be successful" and worked against the interventions. In February 2017, L.M.'s condition deteriorated, and she was hospitalized for suicidal ideations.

Due to the children's declining mental health, the chaotic home situation, mother's depression, and the domestic violence incidents between mother and Brunner, the Department filed a petition for emergency removal of the children. On June 27, 2017, the JDR court entered a preliminary removal order and adjudicated that the children were abused or neglected. At the conclusion of the hearing, the JDR court found Brunner in contempt because he screamed at the judge, refused to follow instructions, would not "settle down," and fought with the courtroom deputies. On August 24, 2017, the JDR court entered a dispositional order, which mother did not appeal.

The Department originally had concurring goals of relative placement and return home. Several relatives petitioned for custody, but the JDR court denied all of their petitions. The Department identified several requirements for mother to achieve the goal of return home. Mother had to demonstrate that she could parent and discipline her children appropriately. The Department also required mother to refrain from having inappropriate discussions with the children. Mother had to maintain stable housing and show that she could financially support the

children.  The Department instructed mother that she must continue to participate in individual counseling, participate in medication management, and follow all recommendations.  Mother had to attend all visitations with the children and maintain contact with the Department.

Mother struggled with maintaining stability.  Throughout the time that the children were in foster care, mother and Brunner had an unstable relationship and periodically lived with one another.  Mother had a miscarriage, and at the time of the hearing, was pregnant with Brunner's child.

Mother maintained housing and worked at two different restaurants while the children were in foster care.  In April 2018, however, mother reported that she was behind in her rent and phone bill.  She completed several parenting classes.  Mother regularly visited with the children, but she did not follow the social worker's recommendations regarding discipline, adult conversations with the children, and making promises.  Mother reported that she was participating in counseling and psychiatric services.

In January 2018, mother participated in a psychological and parental capacity evaluation.  The evaluator noted that "nearly every negative event that occurred in [mother's] life involved her tendency to blame others or due to an unfortunate set of circumstances that she insisted was not her fault."  The evaluator concluded that mother's "most notable . . . [and] most concerning deficit" was "the likely impaired attachment that she ha[d] developed, leaving her focus on her own needs primary to that of her children."

Despite all of the services offered, mother never took any responsibility for her children being placed in foster care and never demonstrated stability in her home.  On February 8, 2018,

the JDR court terminated mother's parental rights to L.M. and A.S. and approved the goal of adoption.[3] Mother appealed to the circuit court.

On July 2, 2018, the parties appeared before the circuit court. The Department presented evidence that L.M. and A.S. attended counseling while in foster care. The counselor diagnosed L.M. with anxiety disorder, mood disorder not otherwise specified, and adjustment disorder. Initially, L.M. exhibited controlling behaviors and tried to parent A.S. The counselor recommended that L.M. and A.S. not live in the same foster home because L.M. had a lot of anger and was cruel to A.S., who needed more individual attention. The counselor described the situation as a "stressed sibling dynamic" that had "a lot of aggression, resentment, fighting, and explosive behaviors."

Once the children were separated, L.M.'s behavioral issues "lessened in severity." At the time of the hearing, L.M.'s mood had stabilized, and the counselor testified that L.M. "presents in many ways as a very typically functioning child though there are things that are still under the surface that are of course there." The social worker also noticed an improvement in L.M.'s behaviors and described L.M. as "doing phenomenally."

The counselor diagnosed A.S. with "other trauma and stressor related disorder and anxiety." Initially, A.S. exhibited "a lot of impulsivity and inattention," as well as "tantrums, a lot of hyperactivity, some defiance, just a lot of strong need to control." A.S. had been willing to engage in therapy, but had not made as much progress as L.M. A.S. had made certain disclosures to the counselor about events in her past that led the counselor to believe that A.S. was suffering from childhood post-traumatic stress disorder. In April 2018, A.S. was hospitalized for suicidal ideations. The counselor testified that A.S. needed "a very, very stable

---

[3] The JDR court terminated the parental rights of the biological father of A.S. and L.M., and the father appealed the decision to the circuit court, which also terminated his parental rights.

- 6 -

[and] very, very consistent home life," as well as "some special, special care." The social worker testified that A.S. was "doing significantly better" since her hospitalization and was in a potential adoptive home, where she received "a lot of attention" and had a "very strict routine."

The Department emphasized that mother still had not resolved the issues that brought the children into foster care, even though she had completed a number of the recommended services. Mother refused to accept the removal of the children and her role in it. Mother continued to engage in adult conversations with the children during visitations. Her continued relationship with Brunner was unstable, and she did not engage in the type of counseling that the Department recommended.

At the conclusion of the Department's case, mother moved to strike, which the circuit court denied. Mother testified that she had completed everything that the Department asked her to do. In January 2018, mother had moved to a three-bedroom apartment, and for the past two years, she had worked in the same restaurant, where she had been promoted to management. Mother participated in parenting classes in Bedford County and Roanoke City. Mother confirmed that she attended all of her visitations with the children, but struggled with knowing what to say or how to say it. She explained that the Department told her that many topics were "inappropriate" and it limited her options as to how she could respond to her children.

Mother also confirmed that she had completed the psychological evaluation. She testified that she had been in counseling for approximately seven years with the same counselor and had seen a psychiatrist. Mother's counselor had diagnosed her with "a mood disorder in the form of Bipolar I, along with comorbid Cluster B traits (i.e., borderline traits)." Her counselor indicated that mother had made "substantial clinical progress" and had maintained "an investment and interest in the overall health, mental health and welfare of her minor children."

Mother believed that the children's well-being started deteriorating once the Department became involved with the family. Mother noticed that her children needed help and sought counseling for L.M. and A.S., before they entered foster care. She admitted that she needed to be more aware about the children overhearing her conversations and reading her court paperwork. Mother testified that she and Brunner were "working out issues" in their relationship. According to mother, L.M. and A.S. loved Brunner and viewed him as a father figure.

At the conclusion of all of the evidence, mother renewed her motion to strike, which the circuit court denied. After hearing the closing arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2) and approved the goal of adoption. On August 2, 2018, the circuit court entered a final order memorializing its ruling. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Code § 16.1-283(B)*

Mother argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(B). She asserts that the Department placed too much emphasis on her relationship

with Brunner, over whom she had no control. She further contends that the Department did not prove that the termination of her parental rights was in the children's best interests.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

The JDR court found that the children were abused or neglected, and mother did not appeal that finding after the dispositional hearing. Once the court found that the children were abused or neglected, the Department was not required to provide services to mother. "Nothing in Code § 16.1-283 or the larger statutory scheme requires that . . . [rehabilitative] services be provided in all cases as a prerequisite to termination under subsection B." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268 (2005); see also Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 408-09 (2012). Nevertheless, the Department referred mother to individual counseling, psychiatric services, parenting classes, mental health skill building services, budget class, and a psychological evaluation.

Furthermore, "subsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms, 46 Va. App. at 270-71 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). Although mother had completed many of the required services, there was no evidence that she had remedied the conditions that led to the children's foster care placement. Mother refused to

acknowledge her role in the children's removal from the home and continually blamed the Department and the child protective services worker for the children's removal. The Department discussed with mother its concerns about Brunner's involvement with the children, but mother maintained her relationship with him and described him as a "good father." The psychologist who evaluated mother also expressed concerns about mother's inability to take "responsibility for her problematic choices," her "interpersonal and emotional state," and her tendency to focus on her own needs before her children's needs. The psychologist concluded,

> Given the characerological concerns related to her personality style in combination with her resistance to acknowledging her role in the concerns related to her children's safety, should Ms. Smith continue to place her children in harm's way (via poor monitoring and/or exposure to concerning relationships), it is recommended that a permanent out-of-home placement be considered.

The circuit court based its decision to terminate mother's parental rights on a number of factors, including mother's "continued involvement with Mr. Brunner, the instability with respect to employment and housing, the findings in the psychological evaluation[s] of both . . . Mr. Brunner, and . . . Ms. Smith and the inappropriate activities during visitation."

The evidence proved that L.M. and A.S. had special needs and required counseling. L.M. had been hospitalized for suicidal ideations before entering foster care, and A.S. required hospitalization for suicidal ideations after entering foster care. At the time of the hearing, L.M. still struggled with some behavioral issues, but had improved and was doing "phenomenally." A.S. also was improving, but required a home with a "very, very stable [and] very, very consistent home life," as well as "special care." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the circumstances, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B) and finding that the termination was in the children's best interests.

*Code § 16.1-283(C)(2)*

Mother also challenges the circuit court's ruling to terminate her parental rights under Code § 16.1-283(C)(2).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

Finally, mother argues that the circuit court erred in terminating her parental rights because the Department had not made reasonable efforts to reunite the children with her and had not provided her with reasonable and appropriate services. Although she restates her assignments of error in the argument section of her opening brief, mother does not develop these arguments. Therefore, the arguments are waived, and we will not consider them. See Muhammad v. Commonwealth, 269 Va. 451, 478 (2005) ("Failure to adequately brief an assignment of error is considered a waiver.").

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.